**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

      Plaintiff,

  v.

DR. ZIKA, DR. GARBARINO,

      Defendants.

_____/

No. C 11-5561 CW (PR)

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
GRANTING DEFENDANTS'
REQUEST FOR JUDICIAL NOTICE

(Docket nos. 2, 15)

Plaintiff, a state prisoner incarcerated at the Correctional Training Facility (CTF) in Soledad, California, filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical and mental health needs.  With his complaint, Plaintiff filed a motion for preliminary injunctive relief, asking the Court to order that he be housed in a single cell for ninety days.

On April 12, 2012, the Court ordered the complaint served on Defendants CTF Chief Mental Health Officer Dr. Bill Zika and CTF psychologist Dr. Garbarino, and directed them to respond to the motion for preliminary injunctive relief.  Defendants have opposed the motion and Plaintiff has filed a reply.

For the reasons discussed below, the Court GRANTS Plaintiff's motion in part and enters a limited preliminary injunction.

DISCUSSION

I.   Legal Standard

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008).

Alternatively, "a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest.  <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal citation, quotation and editing marks omitted).

Additionally, the Prison Litigation Reform Act provides that, in cases brought by prisoners, an order for preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  Such order "shall automatically expire on the date that is 90 days after its entry, unless the court enters a final order for prospective relief" before expiration of the ninety-day period.  <u>Id.</u>

II.  Evidence Considered

A motion for preliminary injunction must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings."  <u>Fidelity Nat. Title Ins. Co. v. Castle</u>, 2011 WL 5882878, *3 (N.D. Cal. 2011) (internal citation omitted). However, "the district court may rely on otherwise inadmissible evidence, including hearsay evidence."  <u>Id.</u>; <u>see also</u> <u>Flynt</u>

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Distributing Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination . . . The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); Ross-Whitney Corp. v. Smith Kline & French Laboratories, 207 F.2d 190, 198 (9th Cir. 1953) (holding preliminary injunction may be granted on affidavits).

For the purpose of deciding the present motion, the Court relies on the following evidence submitted by Plaintiff: the averments in the complaint (docket no. 1) and the declaration he has submitted in support of his reply brief (docket no. 17-1), both of which are signed under penalty of perjury; documents that evidence the recommendations made by CTF medical staff regarding his requests for single cell status; documents that evidence medical progress notes and assessments, test results and prescriptions relevant to his medical and mental health concerns; and documents that evidence his administrative grievances and responses thereto, as relevant to the present motion.

Additionally, the Court GRANTS Defendants' request for judicial notice and relies on the documents they have submitted in support of their opposition, which are identified as Plaintiff's Administrative Health Care Grievance, Log Number CTF HC 11006348, maintained by the California Department of Corrections and Rehabilitation (CDCR) and California Correctional Health Care Services during the course of official business.  Defs.' Req. Jud. Notice Supp. Opp. & Ex. A.

III. Facts

Plaintiff is a convicted sex offender.  He entered the CDCR prison system in 1998 and is serving a term of thirty-one years to life.  Compl. Ex. A-5.

Prior to entering the CDCR, Plaintiff served some jail time, living in a dorm set-up.  He did not suffer any anxiety or panic attacks.  When he entered the CDCR, he was double celled.  Soon thereafter, he became fearful that his cellmate would discover he was a sex offender, and he began to suffer from physical symptoms that resulted in his being admitted to the hospital for evaluation.  He was not referred for mental health care.  Compl. Ex. A-6.

In 2003, at CTF, his cellmate assaulted him after discovering he was a sex offender.  After this event, Plaintiff began to suffer from frequent panic attacks and symptoms associated with post-traumatic stress disorder (PTSD), including nightmares, flashbacks, poor sleep and paranoia.  He was seen in the medical clinic, but was not referred for mental health care.  Compl. Ex. A-6.

In June 2007, Plaintiff's symptoms worsened during a prolonged lockdown.  He was referred for mental health care. Plaintiff's psychologist, Dr. Katz, diagnosed him as suffering from serious panic attacks as the result of having been attacked by his cellmate and his fear of being attacked again.  In August 2008, Plaintiff was prescribed cognitive therapy that consisted of breathing techniques and relaxation skills while housed in a double cell.  He also was prescribed Celexa, an anti-depressant, and Vistaril, an anti-anxiety medication.  Nevertheless, his

United States District Court
For the Northern District of California

symptoms worsened.  Compl. at 1:11-2:2 & Ex. A-7.

Dr. Katz then brought Plaintiff before the CTF Mental Health Interdisciplinary Treatment Team (IDTT) to determine whether double celling posed a serious threat to Plaintiff's mental health.  The IDTT members were Dr. Katz, Dr. Bony, Ph.D., and Defendant Dr. Zika.  On October 9, 2008, all IDTT members approved the following recommendation to CTF custody staff:

> Single cell status for 90 days based on Dx [diagnosis] of panic disorder without agoraphobia 300.01 comorbid with multiple medical problems and emergency room visits ongoing since 1998 when placed in double cell housing.

Compl. Ex. A-1.[1]

CTF custody staff followed the IDTT's recommendation and placed Plaintiff on single cell status for ninety days.  Compl. at 2:22-3:1.  During that period, Plaintiff's panic attacks subsided. Additionally, Dr. Katz informed him that, because his anxiety was "worse" than panic disorder, it would be "virtually impossible" for him to manage it effectively in double cell housing.  Compl. at 3:1-8 & Ex. A-7.  Dr. Katz also diagnosed Plaintiff as suffering from "depressive disorder."  Compl. Ex. A-7.

On December 23, 2008, Dr. Katz brought Plaintiff before the IDTT and recommended extending his single cell status permanently. Compl. at 3:17-22.  At the hearing, Dr. Zika opined that Plaintiff

---

[1] The IDTT cannot order that a prisoner be housed in a single cell or a double cell; it can only make a recommendation to custody staff about medically appropriate housing.  According to Plaintiff, custody staff "will grant single-cell status 100% of the time when requested by the IDTT committee."  Compl. at 2 n.2.

United States District Court
For the Northern District of California

should be double celled because "exposure therapy" is a common treatment for those suffering from severe anxiety, and because of the lack of single cells for more serious cases.  Plaintiff objected to this recommended treatment because of the real threat he would be attacked again.  Compl. at 4:9-17.

Dr. Zika denied Plaintiff's request for permanent single cell status.  He agreed to recommend extending Plaintiff's temporary single cell status for another ninety days, with the caveat that Plaintiff be returned thereafter to a double cell as part of his treatment plan.  Compl. at 4:18-23.  Thus, the IDTT, consisting of Dr. Katz and Dr. Zika, approved the following recommendation to CTF custody staff:

> I/P Gonzalez has been working on his depression and panic d/o sx.  Request permission to extend his single cell status for 3 months until 3/31/09 and then return to double cell status as part of his treatment plan.

Compl. Ex. A-2

Plaintiff then filed an administrative health care appeal requesting that, among other things, he be diagnosed as suffering from PTSD with panic attacks and agoraphobia, and that he be single celled permanently with yearly checkups and monthly counseling.  On January 12, 2009 he was interviewed by CTF psychiatrist Dr. Hutchinson, who prepared a lengthy evaluation of his mental health history and diagnosed him as suffering from panic disorder with agoraphobia "in partial remission," PTSD and depressive disorder.  Compl. Ex. A-9.  Dr. Hutchinson concluded the evaluation by stating that Plaintiff "appears to have significant PTSD + panic attacks that are made worse by double cell situation."  Id.  In response to Plaintiff's administrative

appeal, Dr. Hutchinson and Dr. Zika granted his diagnostic request
and partially granted his celling request, as follows:

> You are currently assigned to single cell until
> 03/31/09.  A decision then will be made about extension
> at that time and will be reviewed every six months.

Compl. Ex. A-3.

Plaintiff filed a second level appeal which, on February 4,
2009, Dr. Zika reviewed and responded to as follows:

> Dr. Hutchinson agreed that you meet the criteria to
> be diagnosed with Post Traumatic Stress Disorder and
> Panic Disorder.  He has recommended that you be
> considered for single cell status, in part, based upon
> this diagnosis.  He, therefore, referred you to another
> Special IDTT that will look at extending your single
> cell status beyond 03/31/09.  This must be done in a
> Special IDTT meeting, since it is a program change and
> all program changes must go through a Special IDTT,
> according to our Program Guide.  If you are granted an
> extension of the single cell status, it can be made for
> up to one year.  It can be re-evaluated after one year
> for a subsequent year, and so forth.  A new chrono would
> be written at that time.
>
> It should also be made clear that no one is
> recommending "exposure therapy" for either Post
> Traumatic Stress Disorder or Panic Disorder.  However,
> your case manager (psychologist) and your psychiatrist
> can work with you, using a variety of treatments, to
> help you manage your stress and anxiety more
> effectively.  This is done on a voluntary treatment
> basis, and cannot be given without your consent (unless
> you are a danger to yourself, a danger to others, or
> gravely disabled).  We are required by law to follow
> this mandate.
>
> I hope that this clarifies the situation for you
> and that your mental health clinicians can help you
> better manage your stress and anxiety.

Compl. Ex. A-11.

On March 19, 2009, the IDTT, which included Dr. Zika,
recommended that Plaintiff's single cell status be continued for
one year, "based on mental health condition."  Compl. Ex. A-12.

On March 25, 2010, the IDTT, which included Plaintiff's

**United States District Court**
For the Northern District of California

psychologist, Defendant Dr. Garbarino, recommended that Plaintiff's single cell status be continued for another year, "based on mental health condition." Compl. Ex. A-25.

In March 2011, Dr. Garbarino met with Plaintiff to discuss his upcoming IDTT meeting to determine whether his single cell status would be continued. She told him that Dr. Zika no longer would recommend extending his single cell status because of pressure from custody staff, and that being double celled would force him to participate in exposure therapy. Compl. at 12:22-13:14.

Plaintiff filed an administrative appeal, asking that his single cell status be extended. Defs.' Ex. A-3. Before he received a response, his scheduled IDTT meeting was held on March 28, 2011. At the meeting, Plaintiff argued to Dr. Zika that returning him to a double cell would seriously harm his mental health. Although Dr. Garbarino initially recommended that Plaintiff be single celled for another year, the IDTT, which consisted of Dr. Zika and Dr. Garbarino, recommended to custody staff that Plaintiff's request be denied, and that he receive "treatment for PTSD/Exposure/medical intervention." Compl. Ex. A-27.

On April 5, 2011, Dr. Zika responded to Plaintiff's administrative appeal. The decision was also signed by "G. Ellis, Chief Executive Officer." In the response, Dr. Zika clarified for Plaintiff that only the IDTT could recommend single cell status. He also summarized what had occurred at the IDTT meeting, as follows:

> . . . The Treatment Team was patient in letting you
> present your case for extension of your single cell
> status.  The IDTT also offered you alternatives, such as
> living on a Sensitive Needs Yard and taking psychotropic
> medication that can help with your symptoms of anxiety.
> You refused to accept any of those alternatives.  Since
> you do not suffer from a major mental illness and there
> are other ways to treat your mental health symptoms that
> do not require living in a single cell situation, the
> IDTT did not recommend an extension of your single cell
> living situation on mental health grounds.  Your Primary
> Clinician is still happy to work with you to manage your
> symptoms through psychotherapy, which can lead to
> cognitive, behavioral, and emotional change.  A
> Psychiatrist can also work with you by reviewing
> psychotropic medications that can help manage your
> symptoms.

Defs.' Ex. A-9.

On April 6, 2011, Plaintiff was returned to a double cell with a cellmate.  Compl. at 8:12-16.

On April 27, 2011, Plaintiff was seen by his primary care physician, Dr. Kohler, who noted that since being returned to a double cell Plaintiff was unable to sleep more than two hours per night, his asthma was exacerbated due to the lack of sleep, he was suffering chest pain resulting from increased asthma inhaler use, and he was suffering from continued migraine cluster headaches and sleep apnea.  In evaluating Plaintiff's medical condition, Dr. Kohler reached the following conclusion about his need to be single celled:

> PTSD - pt has been attacked in his cell and his
> commitment offense makes him vulnerable to further
> violence.  Has been single celled since 10/2008 and was
> recently given a cellie.  Housing with a cellie is not
> therapeutic but poses real threat to the patient of
> violence, worsening mental health, and physical health
> consequences.  Single cell status is needed for his
> protection and to maintain stable mental health and
> physical health.

Compl. Ex. A-21.

United States District Court
For the Northern District of California

On May 11, 2011, Plaintiff's administrative grievance was denied at the second level of review.  The response was prepared and signed by Dr. Zika and G. Ellis, the same two individuals who denied the response at the first level of review.  In addition to the information Dr. Zika had provided in the first level response, he included the following in the second level response:

> . . . The members of the IDTT offered you a number of alternatives to help you with your mental health symptoms.  You were offered support for living on a Sensitive Needs Yard.  This would give you a more protective environment and be less stressful.  You were also offered an appointment with a psychiatrist to review possible psychotropic medications that can help manage your mental health symptoms.  Your primary clinician (Dr. Garbarino, psychologist) was also part of the IDTT and she offered to continue treating you, using recognized treatment approaches to help you manage your mental health symptoms.  You have refused these alternatives, saying they are not helpful to you.  If your functioning was so impaired that you couldn't live in a General Population environment, we could recommend a change in level of care to Enhanced Outpatient Program from CCCMS [Correctional Clinical Case Management System].  However, your Global Assessment of Functioning (GAF) is too high and you are functioning at too high a level to indicate going to an E.O.P. living environment.  With all of this in mind, we still believe that treatment of your symptoms, so that you can manage your condition more successfully, is the best approach.  Living in a single cell would not, in our opinion, lead to an improvement in your condition in the long run.  It would be similar to a person with panic and agoraphobia never leaving their home in order to manage their symptoms.  This would not lead to an improvement in their condition, but would lead to reinforcing their panic and agoraphobia.  Your Primary Clinician, Dr. Garbarino, is still happy to work with you so that you can improve and manage your symptoms more effectively.  I hope that you will work with her toward this goal.

Defs.' Ex. A-7.

In May 2011, Plaintiff relayed Dr. Kohler's evaluation to Dr. Zika and Dr. Garbarino.  Both responded that, regardless of what Plaintiff's doctor opined, they would not recommend single cell

status for him.  Compl. at 10:6-12, 16:28-17:6.

     Plaintiff saw Dr. Garbarino on September 14, 2011, at which time he informed her that, because he was double celled, his migraine headaches were more frequent and his medication had been changed to a stronger prescription, his asthma was exacerbated, and he was now prescribed two inhalers, one of which is a steroid. Compl. at 17:26-18:13 & Ex. A-24.

     On October 12, 2011, Plaintiff's administrative appeal was denied at the third level of review.  Dr. L.D. Zamora, Chief of California Correctional Health Care Services, concluded that, based on a review of Plaintiff's appeal file, he had received adequate mental health care.  Dr. Zamora also reiterated that mental health staff does not have the authority to write a chrono for single cell status, but can only recommend single cell status for mental health concerns.  Defs.' Ex. A-2.

     On October 20, 2011, Plaintiff again saw Dr. Garbarino to request single cell status; she informed him that he was wasting his time and she would not recommend such status.  Compl. at 18:18-19:4.

     On February 15, 2012, Dr. Kohler re-evaluated Plaintiff and made the following assessment: "Sleep deprivation related to concern re potential assault.  Pt becoming increasingly agitated." Reply Ex. A-4.  She also noted that it was difficult to assess whether Plaintiff's asthma symptoms "are related to bronchospasm vs panic."  Id.

     On February 6, 2012, Plaintiff filed another administrative appeal requesting single cell status.  Dr. Zika responded to the appeal on February 22, 2012.  He granted Plaintiff's request to

United States District Court
For the Northern District of California

schedule an IDTT meeting to discuss a recommendation for single cell status.  He denied Plaintiff's request that a case manager, rather than the IDTT, have authority to recommend single cell status, and that his serious mental disorders be recognized as a disability under the ADA.  He stated, however, that the ADA request was partially granted because "mental health staff have already placed you into the Mental Health Service Delivery System for treatment of a mental disorder that is significantly impairing your functioning."  Reply Ex. A-5.

An IDTT meeting was held on March 20, 2012, at which Plaintiff told Dr. Zika and Dr. Garbarino that because he still fears being assaulted by his cellmate he is not getting more than three and one-half hours of sleep per night, is having multiple asthma attacks, is unable to use his C-pap machine for sleep apnea because of severe panic attacks, and is waking up at least four times a week choking and gasping for air.  Dr. Zika and Dr. Garbarino denied Plaintiff's request to recommend single cell status.  Pl.'s Decl. Supp. Reply (Decl.) at 1:26-3:2.

On July 3, 2012, Plaintiff went to his annual IDTT hearing, at which Dr. Zika and custody staff were present.  He requested a different case manager, because his present case manager is "trying to force [him] to use cognitive therapy in a double-cell situation which previously proved ineffective and painful."  Decl. at 3:10-13.  Dr. Zika told Plaintiff it doesn't matter who his case manager is because he will be provided only with cognitive therapy treatment, and if he will not accept cognitive therapy treatment then Dr. Zika wants him "out" of the CCCMS program.  Decl. at 3:3-21.

United States District Court
For the Northern District of California

As of July 8, 2012, the date on which Plaintiff signed his declaration in support of his reply, Plaintiff still was experiencing all of the ailments described in Dr. Kohler's progress notes and continues to fear he will be killed by another inmate while double celled.  Decl. at 3:22-4:5.

IV.  Analysis

Plaintiff asks the Court to enter a preliminary injunction directing that he be single celled for the next ninety days. Defendants raise both procedural and substantive objections to Plaintiff's request.

A.    Pending Class Action Litigation

Defendants first object that Plaintiff's request for injunctive relief is barred by the pending class actions Coleman v. Brown, et al., No. S 90-0520 LKK-JFM (E.D. Cal.) and Plata v. Brown, No. 01-cv-01351 TEH (N.D. Cal.). [2]  Brought by California state inmates, the Coleman class-action lawsuit concerns the constitutional adequacy of the mental health care provided to CDCR inmates; the Coleman class consists of "all inmates with serious mental disorders who are now, or who will in the future, be confined with the California Department of Corrections." (Class Cert. Order, Nov. 14, 1991, 4-5, No. S 90-0520 LKK-JFM (E.D. Cal.).)  The Plata class-action suit concerns the constitutional adequacy of CDCR's inmate medical health care; the Plata class consists of "all prisoners in the custody of the [California

_____

[2] Defendants have not submitted any documents from either Coleman or Plata.  The Court, therefore, takes judicial notice of relevant documents from those cases.

13

**United States District Court**
For the Northern District of California

Department of Corrections] with serious medical needs." (Stip. for Inj. Relief 5, ECF No. 24, No. 01-cv-01351 TEH (N.D. Cal.).)

Plaintiff does not dispute that he is a member of the <u>Coleman</u> and <u>Plata</u> classes.  Rather, he argues that his claim for injunctive relief falls outside the purview of those actions.

A plaintiff who is a member of a class action for equitable relief from prison conditions may not maintain a separate, individual suit for equitable relief involving the same subject matter of the class action.  See <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93 (9th Cir. 1979); <u>see also</u> <u>McNeil v. Guthrie</u>, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action.")  He, however, may pursue equitable relief that goes beyond that which is covered by the class action.  See <u>Crawford</u>, 599 F.2d at 893 (reversing district court's dismissal of plaintiff's claims for relief that were not included in a class action challenging overcrowding); <u>accord</u>, <u>McNeil</u>, 945 F.2d at 1166 n.4 ("class members may bring individual actions for equitable relief when their claims are not being litigated within the boundaries of the class action").

When reviewing claims for equitable relief brought by prisoners who are members of the <u>Coleman</u> and <u>Plata</u> classes, a number of district courts have concluded that an individual class member may proceed with a separate action for equitable or injunctive relief if he seeks relief that is specific to his medical needs and the circumstances of his incarceration, rather than the broad, systemic relief targeted by those actions.  See,

**United States District Court**
For the Northern District of California

e.g., Burnett v. Dugan, 618 F. Supp. 2d 1232, 1236-37 (S.D. Cal. 2009) (granting preliminary injunction requiring defendants to adhere to chronos for plaintiff's medically-indicated housing needs because he was not seeking "relief on behalf of all the other inmates in the CDCR," nor "broad based reform of the CDCR's medical practices which is the subject of the Plata litigation," but, rather, relief that was "quite narrow and specific" to him); Moore v. McDonald, 2011 WL 3684608, *4 (E.D. Cal.) (denying defendants' motion to dismiss under Plata and allowing plaintiff to proceed with "discrete, individualized claims for equitable relief" pertaining to his receipt of insulin and a special diet for his diabetes); Rincon v. Cate, 2010 WL 5863894, *4 (S.D. Cal.) (authorizing plaintiff to "maintain a separate suit arising from his discrete medical condition"); Neumann v. Veal, 2008 WL 2705549, *2-3 (E.D. Cal.) (finding plaintiff's claims for injunctive relief regarding inadequate mental health care "appear to be unique to him" and allowing him to proceed individually on those claims because Coleman does not adequately protect his rights); Tillis v. Lamarque, 2006 WL 644876, *9 (N.D. Cal.) (finding plaintiff's request for transfer to another institution for appropriate medical treatment not barred by Plata because "[p]laintiff is seeking relief solely on his own behalf . . . .").

In the present case, the injunctive relief sought by Plaintiff does not seek broad reform or implicate the policies, procedures and practices put in place by the Plata and Coleman cases.  Rather, he seeks specific, individualized relief from the alleged unconstitutional practices of particular prison doctors.

Accordingly, the Court finds that because Plaintiff's request concerns an individual prisoner's needs, is based on his unique circumstances and is made solely on his own behalf, it is not barred because he is a member of the <u>Plata</u> and <u>Coleman</u> classes; thus, he may proceed with his claim for injunctive relief.

B.   Requirements for Preliminary Injunction

1.   Likelihood of Success on the Merits

a.   Applicable Law

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Serious medical needs include serious mental health needs.  <u>See</u> <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1059.

i.   Serious Medical Need

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  <u>Id.</u>  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are

United States District Court
For the Northern District of California

examples of indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60; see also Doty, 37 F.3d at 546 (applying same standard to serious mental health need).

As discussed above, Plaintiff has presented evidence that he has been diagnosed by medical professionals as suffering from severe anxiety and panic attacks with psychological and physical manifestations, depressive mood disorder, sleep disturbance and deprivation, aggravated asthma, chest pains caused by increased asthma inhaler use, migraine cluster headaches and sleep apnea. Defendants have not presented evidence that calls into question these diagnoses, nor do they dispute that Plaintiff has serious medical and mental health needs.

Based on the above, the Court finds Plaintiff has presented evidence that shows he is likely to succeed on the first element of his Eighth Amendment claim, that is, that he has serious medical and mental health needs.

ii.   Deliberate Indifference

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  Id.

Neither a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment nor a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is sufficient

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

to establish deliberate indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, the reliance by prison officials upon a second medical opinion which a reasonable person would likely determine to be inferior to one from a more qualified medical authority may amount to an Eighth Amendment violation. See Hamilton v. Endell, 981 F.2d 1062, 1066-67 (9th Cir. 1992). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health.  Toguchi, 391 F.3d at 1058.

Failing to provide adequate medical care because of budgetary constraints or non-medical administrative reasons does not excuse a doctor's deliberate indifference to an inmate's serious medical needs.  See Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (finding plaintiff stated claim for deliberate indifference to serious medical needs where he alleged jail officials failed to treat his hernia because of budgetary constraints); Jett v. Penner, 439 F.3d 1091, 1097 (9th Cir. 2006) (finding plaintiff raised triable issue as to whether prison doctor acted with deliberate indifference when he did not arrange follow-up medical care because recommended hospital was not on prison's list of contracting facilities).  Additionally, in deciding whether there has been deliberate indifference to an inmate's serious medical needs, the court need not defer to the judgment of prison doctors or administrators.  Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th

Cir. 1989).

Defendants argue that Plaintiff cannot show that they have acted with deliberate indifference to his serious medical and mental health needs because he has received adequate care and his disagreement is with their choice of treatment, i.e., their decision that he should be double celled or agree to be transferred to a sensitive needs yard (SNY).  Plaintiff argues, however, that Defendants' decision to change their treatment plan and no longer recommend that he be single celled is medically unacceptable; their decision was made based not on his symptoms or prognosis but on the prison's administrative needs; when they made their decision they were aware that it would result in a substantial risk of harm to his medical and mental health; and the option of transfer to a SNY is medically unacceptable because he still will be double celled.

The Court finds that the following evidence presented by Plaintiff shows that he has raised serious questions as to the merits of the deliberate indifference element of his Eighth Amendment claim: since 2008 Defendants have concurred with the diagnoses of Plaintiff's treating psychiatrists, psychologists and physicians that he suffers from severe medical and mental health problems resulting from his having been attacked by a cellmate and his fear of being attacked again; from October 2008 until April 2011 they consistently recommended that he be single celled as a necessary and effective means of alleviating or minimizing his psychological and physical distress; in April 2011, despite no change in Plaintiff's diagnosis or prognosis, they refused to recommend that he continue to be single celled and stated that

**United States District Court**
For the Northern District of California

"the best approach" for treating his symptoms includes his being double celled, Defs.' Ex. A-7, even though prior attempts at such therapy have aggravated his symptoms; shortly after he was returned to a double cell in April 2011, Dr. Kohler, his primary care physician, opined that housing Plaintiff in a double cell is "not therapeutic," and "poses real threat" to him of "worsening mental health, and physical health consequences," and that he requires single cell status in order "to maintain stable mental health and physical health," Compl. Ex. A-21; in February 2012, Dr. Kohler assessed him as suffering from increased agitation due to sleep deprivation resulting from his fear of assault, and from increased asthma attacks, Reply Ex. A-4; and his sleep apnea, asthma and migraine headaches have increased in both severity and frequency since he was returned to a double cell, his medications have been increased to address those problems, and he is suffering from certain side effects, such as chest pain from increased asthma inhaler use.

   b. Summary

  For the reasons discussed above, the Court finds that the evidence presented by Plaintiff raises serious questions going to the merits of his claim.  Accordingly, Plaintiff has satisfied the first factor necessary for granting a preliminary injunction.

   2. Irreparable Harm

  Defendants argue that Plaintiff has not shown that he will suffer irreparable harm if he continues to be double celled. Specifically, they argue that the medical diagnoses made by Dr. Kohler since Plaintiff has been double celled are unreliable because they are based on self-serving statements made by

United States District Court
For the Northern District of California

1    Plaintiff to Dr. Kohler.  Additionally, Defendants argue that

2    Plaintiff cannot show that he will suffer irreparable harm from

3    being double celled because his claim is based on his

4    unsubstantiated proposition that he will be attacked by a

5    cellmate.

6        The Court finds Defendants' arguments unpersuasive.  As set

7    forth above in detail, Plaintiff has presented substantial

8    evidence that since being returned to a double cell his

9    psychological and physical ailments have increased in severity and

10   frequency.  Defendants have presented no evidence that calls into

11   question Dr. Kohler's diagnosis that Plaintiff suffers from sleep

12   apnea, sleep deprivation, migraine headaches and asthma, and that

13   all of these symptoms have been aggravated by the psychological

14   distress Plaintiff is suffering from being double celled.

15   Further, Plaintiff's inability to present evidence that

16   definitively shows he will be attacked if he remains double celled

17   does not bear on this analysis; while Plaintiff fears that he will

18   be attacked by a cellmate, his allegations of irreparable harm

19   concern the documented medical and mental health problems he is

20   suffering as the result of being double celled, not the

21   irreparable harm he will suffer if he is attacked.

22       Finally, the Ninth Circuit has held that where, as here, a

23   plaintiff seeking a preliminary injunction claims alleged injury

24   to his constitutional rights, such injury, standing alone,

25   generally constitutes irreparable harm because the violation of

26   constitutional rights "cannot be adequately remedied through

27   damages." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138 (9th

28   Cir. 2009) (finding plaintiffs would suffer irreparable harm if

**United States District Court**
For the Northern District of California

preliminary injunction were denied and defendants were found at trial to have violated their constitutional rights).

Accordingly, the Court finds that Plaintiff has demonstrated that he is likely to suffer irreparable harm if he remains double celled.

### 3.   Balance of Equities/Hardships

Defendants do not make any argument as to the balance of hardships.  As described above, Plaintiff has demonstrated that he is likely to suffer irreparable harm to his psychological and physical health if he remains double celled.  By contrast, the only evidence of potential hardship to Defendants is that of budgetary and/or administrative hardship stemming from a lack of single cells.

The Ninth Circuit has established that, "[f]aced with such a conflict between financial concerns and preventable human suffering," the balance of hardships "tips decidedly" in favor of those who face physical and emotional suffering.  Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983); see also Rodde v. Bonta, 357 F.3d 988, 999 (9th Cir. 2004).

Accordingly, the Court finds that the balance of hardships tips sharply in Plaintiff's favor.

### 4.   Public Interest

Defendants do not make any argument as to whether the public interest favors the grant of preliminary injunctive relief.  The provision of constitutionally adequate care for medically and mentally ill prisoners clearly is in the public interest.  See, e.g., Mayweathers v. Newland, 258 F.3d 930, 938 (9th Cir. 2001) (finding protection of inmates' religious rights is in the public

**United States District Court**
For the Northern District of California

interest); <u>Rouser v. White</u>, 707 F. Supp. 2d 1055, 1071 (E.D. Cal. 2010) (accord).  Accordingly, the public interest factor of the test for preliminary injunctive relief favors Plaintiff.

     5.   Summary

For the reasons discussed above, the Court finds that Plaintiff has met all of the elements that must be established in order to prevail on a request for preliminary injunctive relief. Specifically, he has shown: 1) that serious questions going to the merits of his claim have been raised; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of hardships tips sharply in his favor; and 4) an injunction is in the public interest.  <u>Winter</u>, 555 U.S. at 20; <u>Alliance for the Wild Rockies</u>, 632 F.3d at 1131.

    C.   Scope of Preliminary Injunction

As discussed above, a preliminary injunction in a case brought by a prisoner "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Defendants argue that the Court should not grant Plaintiff the preliminary injunctive relief he seeks because his request to be housed in a single cell goes beyond maintaining the status quo of his current housing assignment, and because Defendants do not have the authority to order that he be housed in a single cell.

The function of a preliminary injunction is to preserve the status quo <u>ante litem</u>.  <u>Regents of University of California v. American Broadcasting Companies, Inc.</u>, 74 F.2d 511, 514 (9th Cir. 1984).  "The status quo <u>ante litem</u> refers not simply to any

23

United States District Court
For the Northern District of California

situation before the filing of a lawsuit, but instead to 'the last, uncontested status which preceded the pending controversy.'" GOTO.COM, Inc. v. Walt Disney Company, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation and citation omitted).

Here, the last uncontested status of the parties was prior to Plaintiff's March 2011 IDTT hearing, when he was still single celled based on Defendants' March 2010 recommendation to custody staff, and Defendants had not yet recommended that he be double celled. Thus, the parties' positions ante litem would be preserved by ordering Plaintiff housed in a single cell. Defendants, however, are correct that the Court is without jurisdiction to order that Plaintiff be single celled because the parties' evidence undisputedly shows that, while the IDTT can recommend single cell status, only custody staff can make the ultimate decision as to where Plaintiff will be housed. Here, Plaintiff does not allege, and the evidence does not show, that custody staff ever have refused to house him in a single cell when such housing has been recommended by Defendants; neither has Plaintiff named any custody staff as Defendants.

Although the Court will not order, at this point in the proceedings, that Plaintiff be housed a single cell, the Court finds that Plaintiff is entitled to limited preliminary injunctive relief that requires Defendants to reinstate their recommendation to custody staff that he be single celled.

Accordingly, Plaintiff's motion for preliminary injunctive relief is GRANTED in part, as follows:

No later than **ten days** from the date this Order is filed, Defendants, acting in their IDTT capacity, shall submit to custody

staff a recommendation that Plaintiff be housed in a single cell
for ninety days.  Defendants shall file a copy of their
recommendation with the Court and serve a copy on Plaintiff.

If custody staff refuse to house Plaintiff in a single cell
in accord with the IDTT's recommendation, Plaintiff, after
exhausting his administrative remedies and failing to obtain the
relief he seeks, may amend his complaint to name as Defendants the
custody staff with the authority to place him in a single cell,
and may renew his request for a preliminary injunction against
those newly-named Defendants.

This Order terminates Docket nos. 2 and 15.

IT IS SO ORDERED.

Dated: 9/26/2012

CLAUDIA WILKEN
United States District Judge

25