IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,                        No. C 11-5561 CW (PR)

      Plaintiff,                     ORDER GRANTING DEFENDANTS' MOTION FOR
                                         SUMMARY JUDGMENT, DENYING PLAINTIFF'S
   v.                                    CROSS-MOTION FOR SUMMARY JUDGMENT,
                                         DENYING PLAINTIFF'S REQUEST TO RENEW
DR. ZIKA, DR. GARBARINO,                 PRELIMINARY INJUNCTION, DENYING
                                         DEFENDANTS' MOTION FOR LEAVE TO FILE
    Defendants.                       MOTION FOR RECONSIDERATION

_____/                 (Docket nos. 18, 35, 43, 45, 47, 59)

United States District Court
For the Northern District of California

Plaintiff, a state prisoner incarcerated at the Correctional
Training Facility (CTF) in Soledad, California, filed this pro se
civil rights action pursuant to 42 U.S.C. § 1983, alleging
deliberate indifference to his serious mental health and medical
needs.  With his complaint, Plaintiff filed a motion for
preliminary injunctive relief, asking the Court to order that he
be housed in a single cell for ninety days.

On September 26, 2012, the Court granted in part Plaintiff's
motion for a preliminary injunction and ordered Defendants to
recommend to prison officials that Plaintiff be single-celled for
ninety days.  Docket no. 24.  Thereafter, on December 27, 2012,
the Court granted Plaintiff's request to renew the preliminary
injunction.  Docket no. 40.

Now pending before the Court are the following motions, each
of which has been fully briefed by the parties: (1) Defendants'
motion for summary judgment, (2) Plaintiff's cross-motion for
summary judgment, (3) Plaintiff's motion to renew the preliminary
injunction for a second time, and (4) Defendants' motion for leave

**United States District Court**
For the Northern District of California

to file a motion for reconsideration of the order renewing the preliminary injunction for the first time.

For the reasons discussed below, Defendants' motion for summary judgment is GRANTED, Plaintiff's cross-motion for summary judgment and motion to renew the preliminary injunction are DENIED, and Defendants' motion for leave to file a motion for reconsideration is DENIED.

BACKGROUND

The following statement of facts is taken from the allegations in Plaintiff's verified complaint and the exhibits attached thereto, as summarized in the Court's prior order partially granting the motion for preliminary injunction.[1]

> Plaintiff is a convicted sex offender.  He entered the CDCR [California Department of Corrections and Rehabilitation] prison system in 1998 and is serving a term of thirty-one years to life.  Compl. Ex. A-5.
>
> Prior to entering the CDCR, Plaintiff served some jail time, living in a dorm set-up.  He did not suffer any anxiety or panic attacks.  When he entered the CDCR, he was double celled.  Soon thereafter, he became fearful that his cellmate would discover he was a sex offender, and he began to suffer from physical symptoms that resulted in his being admitted to the hospital for evaluation.  He was not referred for mental health care. Compl. Ex. A-6.
>
> In 2003, at CTF, his cellmate assaulted him after discovering he was a sex offender.  After this event, Plaintiff began to suffer from frequent panic attacks and symptoms associated with post-traumatic stress disorder (PTSD), including nightmares, flashbacks, poor

---

[1] A verified complaint may be used as an affidavit on summary judgment, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).  The Court addresses the disputed facts presented by Defendants in its analysis of the summary judgment motion.

United States District Court
For the Northern District of California

sleep and paranoia.  He was seen in the medical clinic, but was not referred for mental health care.  Compl. Ex.A-6.

In June 2007, Plaintiff's symptoms worsened during a prolonged lockdown.  He was referred for mental health care.  Plaintiff's psychologist, Dr. Katz, diagnosed him as suffering from serious panic attacks as the result of having been attacked by his cellmate and his fear of being attacked again.  In August 2008, Plaintiff was prescribed cognitive therapy that consisted of breathing techniques and relaxation skills while housed in a double cell.  He also was prescribed Celexa, an anti-depressant, and Vistaril, an anti-anxiety medication.  Nevertheless, his symptoms worsened.  Compl. at 1:11-2:2 & Ex. A-7.

Dr. Katz then brought Plaintiff before the CTF Mental Health Interdisciplinary Treatment Team (IDTT) to determine whether double celling posed a serious threat to Plaintiff's mental health.  The IDTT members were Dr. Katz, Dr. Bony, Ph.D., and Defendant Dr. Zika.  On October 9, 2008, all IDTT members approved the following recommendation to CTF custody staff:

Single cell status for 90 days based on Dx [diagnosis] of panic disorder without agoraphobia 300.01 comorbid with multiple medical problems and emergency room visits ongoing since 1998 when placed in double cell housing.

Compl. Ex. A-1.1[2]

CTF custody staff followed the IDTT's recommendation and placed Plaintiff on single cell status for ninety days.  Compl. at 2:22-3:1.  During that period, Plaintiff's panic attacks subsided.

Additionally, Dr. Katz informed him that, because his anxiety was "worse" than panic disorder, it would be "virtually impossible" for him to manage it effectively in double cell housing.  Compl. at 3:1-8 & Ex. A-7.  Dr.

---

[2] The IDTT cannot order that a prisoner be housed in a single cell or a double cell; it can only make a recommendation to custody staff about medically appropriate housing.  According to Plaintiff, custody staff "will grant single-cell status 100% of the time when requested by the IDTT committee."  Compl. at 2 n.2.

United States District Court
For the Northern District of California

Katz also diagnosed Plaintiff as suffering from "depressive disorder." Compl. Ex. A-7.

On December 23, 2008, Dr. Katz brought Plaintiff before the IDTT and recommended extending his single cell status permanently. Compl. at 3:17-22. At the hearing, Dr. Zika opined that Plaintiff should be double celled because "exposure therapy" is a common treatment for those suffering from severe anxiety, and because of the lack of single cells for more serious cases. Plaintiff objected to this recommended treatment because of the real threat he would be attacked again. Compl. at 4:9-17.

Dr. Zika denied Plaintiff's request for permanent single cell status. He agreed to recommend extending Plaintiff's temporary single cell status for another ninety days, with the caveat that Plaintiff be returned thereafter to a double cell as part of his treatment plan. Compl. at 4:18-23. Thus, the IDTT, consisting of Dr. Katz and Dr. Zika, approved the following recommendation to CTF custody staff:

> I/P Gonzalez has been working on his depression and panic d/o sx. Request permission to extend his single cell status for 3 months until 3/31/09 and then return to double cell status as part of his treatment plan.

Compl. Ex. A-2

Plaintiff then filed an administrative health care appeal requesting that, among other things, he be diagnosed as suffering from PTSD with panic attacks and agoraphobia, and that he be single celled permanently with yearly checkups and monthly counseling. On January 12, 2009 he was interviewed by CTF psychiatrist Dr. Hutchinson, who prepared a lengthy evaluation of his mental health history and diagnosed him as suffering from panic disorder with agoraphobia "in partial remission," PTSD and depressive disorder. Compl. Ex. A-9. Dr. Hutchinson concluded the evaluation by stating that Plaintiff "appears to have significant PTSD + panic attacks that are made worse by double cell situation." Id. In response to Plaintiff's administrative appeal, Dr. Hutchinson and Dr. Zika granted his diagnostic request and partially granted his celling request, as follows:

> You are currently assigned to single cell until 03/31/09. A decision then will be made about extension at that time and will be reviewed every six months.

Compl. Ex. A-3.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff filed a second level appeal which, on February 4,2009, Dr. Zika reviewed and responded to as follows:

> Dr. Hutchinson agreed that you meet the criteria to be diagnosed with Post Traumatic Stress Disorder and Panic Disorder.  He has recommended that you be considered for single cell status, in part, based upon this diagnosis.  He, therefore, referred you to another Special IDTT that will look at extending your single cell status beyond 03/31/09.  This must be done in a Special IDTT meeting, since it is a program change and all program changes must go through a Special IDTT, according to our Program Guide.  If you are granted an extension of the single cell status, it can be made for up to one year.  It can be re-evaluated after one year for a subsequent year, and so forth.  A new chrono would be written at that time.

> It should also be made clear that no one is recommending "exposure therapy" for either Post Traumatic Stress Disorder or Panic Disorder.  However, your case manager (psychologist) and your psychiatrist can work with you, using a variety of treatments, to help you manage your stress and anxiety more effectively.  This is done on a voluntary treatment basis, and cannot be given without your consent (unless you are a danger to yourself, a danger to others, or gravely disabled).  We are required by law to follow this mandate.

> I hope that this clarifies the situation for you and that your mental health clinicians can help you better manage your stress and anxiety.

Compl. Ex. A-11.

On March 19, 2009, the IDTT, which included Dr. Zika, recommended that Plaintiff's single cell status be continued for one year, "based on mental health condition."  Compl. Ex. A-12.

On March 25, 2010, the IDTT, which included Plaintiff's psychologist, Defendant Dr. Garbarino, recommended that Plaintiff's single cell status be continued for another year, "based on mental health condition."  Compl. Ex. A-25.

In March 2011, Dr. Garbarino met with Plaintiff to discuss his upcoming IDTT meeting to determine whether his single cell status would be continued.  She told him that Dr. Zika no longer would recommend extending his single cell status because of pressure from custody staff, and that being double celled would force him to participate in exposure therapy.  Compl. at 12:22-13:14.

5

Plaintiff filed an administrative appeal, asking that his single cell status be extended.  Defs.' Ex. A-3.  Before he received a response, his scheduled IDTT meeting was held on March 28, 2011.  At the meeting, Plaintiff argued to Dr. Zika that returning him to a double cell would seriously harm his mental health.  Although Dr. Garbarino initially recommended that Plaintiff be single celled for another year, the IDTT, which consisted of Dr. Zika and Dr. Garbarino, recommended to custody staff that Plaintiff's request be denied, and that he receive "treatment for PTSD/Exposure/medical intervention."  Compl. Ex. A-27.

On April 5, 2011, Dr. Zika responded to Plaintiff's administrative appeal.  The decision was also signed by G. Ellis, Chief Executive Officer.  In the response, Dr. Zika clarified for Plaintiff that only the IDTT could recommend single cell status.  He also summarized what had occurred at the IDTT meeting, as follows:

> . . . The Treatment Team was patient in letting you present your case for extension of your single cell status.  The IDTT also offered you alternatives, such as living on a Sensitive Needs Yard and taking psychotropic medication that can help with your symptoms of anxiety.
>
> You refused to accept any of those alternatives. Since you do not suffer from a major mental illness and there are other ways to treat your mental health symptoms that do not require living in a single cell situation, the IDTT did not recommend an extension of your single cell living situation on mental health grounds.  Your Primary Clinician is still happy to work with you to manage your symptoms through psychotherapy, which can lead to cognitive, behavioral, and emotional change.  A Psychiatrist can also work with you by reviewing psychotropic medications that can help manage your symptoms.

Defs.' Ex. A-9.

On April 6, 2011, Plaintiff was returned to a double cell with a cellmate.  Compl. at 8:12-16.

On April 27, 2011, Plaintiff was seen by his primary care physician, Dr. Kohler, who noted that since being returned to a double cell Plaintiff was unable to sleep more than two hours per night, his asthma was exacerbated due to the lack of sleep, he was suffering chest pain resulting from increased asthma inhaler use, and he was suffering from continued migraine cluster headaches and sleep apnea.  In evaluating Plaintiff's medical condition, Dr. Kohler reached the following conclusion about his need to be single celled:

PTSD - pt has been attacked in his cell and his commitment offense makes him vulnerable to further violence.  Has been single celled since 10/2008 and was recently given a cellie.  Housing with a cellie is not therapeutic but poses real threat to the patient of violence, worsening mental health, and physical health consequences.  Single cell status is needed for his protection and to maintain stable mental health and physical health.

Compl. Ex. A-21.

On May 11, 2011, Plaintiff's administrative grievance was denied at the second level of review.  The response was prepared and signed by Dr. Zika and G. Ellis, the same two individuals who denied the response at the first level of review.  In addition to the information Dr. Zika had provided in the first level response, he included the following in the second level response:

. . . The members of the IDTT offered you a number of alternatives to help you with your mental health symptoms.  You were offered support for living on a Sensitive Needs Yard.  This would give you a more protective environment and be less stressful.  You were also offered an appointment with a psychiatrist to review possible psychotropic medications that can help manage your mental health symptoms.  Your primary clinician (Dr. Garbarino, psychologist) was also part of the IDTT and she offered to continue treating you, using recognized treatment approaches to help you manage your mental health symptoms.  You have refused these alternatives, saying they are not helpful to you.  If your functioning was so impaired that you couldn't live in a General Population environment, we could recommend a change in level of care to Enhanced Outpatient Program from CCCMS {Correctional Clinical Case Management System}.  However, your Global Assessment of Functioning (GAF) is too high and you are functioning at too high a level to indicate going to an E.O.P. living environment.  With all of this in mind, we still believe that treatment of your symptoms, so that you can manage your condition more successfully, is the best approach.  Living in a single cell would not, in our opinion, lead to an improvement in your condition in the long run.  It would be similar to a person with panic and agoraphobia never leaving their home in order to manage their symptoms.  This would not lead to an improvement in their condition, but would lead to reinforcing their panic and agoraphobia.  Your Primary Clinician, Dr. Garbarino, is still happy to work with you so that you can improve and manage your symptoms more

effectively.  I hope that you will work with her toward this goal.

Defs.' Ex. A-7.

In May 2011, Plaintiff relayed Dr. Kohler's evaluation to Dr. Zika and Dr. Garbarino.  Both responded that, regardless of what Plaintiff's doctor opined, they would not recommend single cell status for him.  Compl. at 10:6-12, 16:28-17:6.

Plaintiff saw Dr. Garbarino on September 14, 2011, at which time he informed her that, because he was double celled, his migraine headaches were more frequent and his medication had been changed to a stronger prescription, his asthma was exacerbated, and he was now prescribed two inhalers, one of which is a steroid. Compl. at 17:26-18:13 & Ex. A-24.

On October 12, 2011, Plaintiff's administrative appeal was denied at the third level of review.  Dr. L.D. Zamora, Chief of California Correctional Health Care Services, concluded that, based on a review of Plaintiff's appeal file, he had received adequate mental health care.  Dr. Zamora also reiterated that mental health staff does not have the authority to write a chrono for single cell status, but can only recommend single cell status for mental health concerns.  Defs.' Ex. A-2.

On October 20, 2011, Plaintiff again saw Dr. Garbarino to request single cell status; she informed him that he was wasting his time and she would not recommend such status.  Compl. at 18:18-19:4.

On February 15, 2012, Dr. Kohler re-evaluated Plaintiff and made the following assessment: "Sleep deprivation related to concern re potential assault.  Pt becoming increasingly agitated."  Reply Ex. A-4.  She also noted that it was difficult to assess whether Plaintiff's asthma symptoms "are related to bronchospasm vs panic."  Id.

On February 6, 2012, Plaintiff filed another administrative appeal requesting single cell status. Dr. Zika responded to the appeal on February 22, 2012. He granted Plaintiff's request to schedule an IDTT meeting to discuss a recommendation for single cell status.  He denied Plaintiff's request that a case manager, rather than the IDTT, have authority to recommend single cell status, and that his serious mental disorders be recognized as a disability under the ADA.  He stated, however, that the ADA request was partially granted because "mental health staff have already placed you into the Mental Health Service Delivery System for treatment of a mental disorder that

is significantly impairing your functioning." Reply Ex. A-5.

An IDTT meeting was held on March 20, 2012, at which Plaintiff told Dr. Zika and Dr. Garbarino that because he still fears being assaulted by his cellmate he is not getting more than three and one-half hours of sleep per night, is having multiple asthma attacks, is unable to use his C-pap machine for sleep apnea because of severe panic attacks, and is waking up at least four times a week choking and gasping for air. Dr. Zika and Dr. Garbarino denied Plaintiff's request to recommend single cell status. Pl.'s Decl. Supp. Reply (Decl.) at 1:26-3:2.

On July 3, 2012, Plaintiff went to his annual IDTT hearing, at which Dr. Zika and custody staff were present. He requested a different case manager, because his present case manager is "trying to force [him] to use cognitive therapy in a double-cell situation which previously proved ineffective and painful." Decl. at 3:10-13. Dr. Zika told Plaintiff it doesn't matter who his case manager is because he will be provided only with cognitive therapy treatment, and if he will not accept cognitive therapy treatment then Dr. Zika wants him "out" of the CCCMS program. Decl. at 3:3-21.

As of July 8, 2012, the date on which Plaintiff signed his declaration in support of his reply, Plaintiff still was experiencing all of the ailments described in Dr. Kohler's progress notes and continues to fear he will be killed by another inmate while double celled. Decl. at 3:22-4:5.

Docket no. 24 at 4:2-13:5.

DISCUSSION

I.   Defendants' Motion for Summary Judgment

     A.   Legal Standard

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  <u>Id.</u>

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  <u>See</u> <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  <u>See</u> <u>T.W. Elec. Serv. v. Pacific Elec.</u> <u>Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  <u>See</u> <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

**United States District Court**
For the Northern District of California

B.   Deliberate Indifference Standard

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Serious medical needs include serious mental health needs.  See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need.  McGuckin, 974 F.2d at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Id.  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  In order for

**United States District Court**
For the Northern District of California

deliberate indifference to be established, therefore, there must
be a purposeful act or failure to act on the part of the defendant
and resulting harm.  See McGuckin, 974 F.2d at 1060.

Deliberate indifference may be shown when prison officials
deny, delay or intentionally interfere with medical treatment, or
it may be shown in the way in which they provide medical care.
See id. at 1062.  But neither a difference of opinion between a
prisoner-patient and prison medical authorities regarding
treatment nor a showing of nothing more than a difference of
medical opinion as to the need to pursue one course of treatment
over another is sufficient to establish deliberate indifference.
See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004).  In
order to prevail on a claim involving choices between alternative
courses of treatment, a plaintiff must show that the course of
treatment the doctors chose was medically unacceptable under the
circumstances, and that they chose this course in conscious
disregard of an excessive risk to the plaintiff's health.  Id. at
1058.

C.   Analysis

Plaintiff claims that Defendants' refusal, in 2011, to
recommend that he continue to be single celled amounted to
deliberate indifference to his serious mental health and medical
needs.

1.   Defendants' Evidence

Defendants do not dispute that Plaintiff has serious mental
health and medical needs.  Instead, they move for summary judgment
on the ground that he cannot show that they acted with deliberate
indifference because their revised recommendation that he no

12

longer be single celled is based on their considered evaluation of his mental health needs and his objections thereto amount to nothing more than a difference of opinion from that of his mental health care providers.  In particular, Defendants assert that, although they previously diagnosed Plaintiff with PTSD and determined that he required single cell housing for that reason, they subsequently determined that he does not have PTSD and, consequently, their treatment plan has changed.  Specifically, Defendants maintain that Plaintiff has more generalized panic attacks and anxiety, which conditions are most amenable to being treated by, among other things, housing him with a cellmate.

Defendants present the following evidence in support of their argument.  In 2008, CTF mental health staff accepted Plaintiff into CDCR's mental health delivery system, evaluated and diagnosed his condition, and developed a treatment plan that focused on having him address and control his anxiety disorder.  Decl. B. Zika Supp. Mot. Summ. J. ("Zika Decl.") ¶ 4.  In October 2008, Plaintiff was diagnosed by mental health staff with Panic Disorder Without Agoraphobia, a condition which includes sudden, intense, and brief anxiety, but without avoidance, related to open spaces or any place outside of one's home or a safe zone.  Id. ¶ 5. Following this diagnosis, mental health staff recommended to CTF custody staff that Plaintiff be placed in single cell housing for a short duration.  Id.

In February 2009, Plaintiff's mental condition was reassessed and clinical staff diagnosed him with PTSD and Panic Attacks with Agoraphobia, stemming from an incident that occurred in 2003. Zika Decl. ¶ 8.  According to a 2004 confidential memorandum in

**United States District Court**
For the Northern District of California

Plaintiff's central file, the incident involved physical pushing and shoving between Plaintiff and his former cellmate after the cellmate found some of Plaintiff's legal paperwork.  Zika Decl. Supp. Reply ¶ 5.

PTSD is classified as an anxiety disorder, characterized by adverse anxiety-related experiences, behaviors, and physiological responses that develop after exposure to a psychologically traumatic event, sometimes referred to as a "triggering event." Zika Decl. ¶ 8.  At regular intervals after diagnosing Plaintiff with PTSD, mental health staff recommended extending his single cell status as he worked on his panic symptoms, with the intention that he eventually be returned to double cell housing.  Id.

Plaintiff began seeing Defendant Dr. Garbarino, a staff psychologist, in March 2010.  Through October 2011, Dr. Garbarino met with him at least twenty-one times concerning his anxiety disorder.  Zika Decl. ¶ 10 & Ex. A at 245-444.  During the course of this treatment, Dr. Garbarino assessed him with significant PTSD and panic attacks, and developed a treatment plan that included helping him to identify triggers to increased anxiety, depression and hopelessness; establish rapport and trust to provide appropriate and constructive communication of moods; address triggers to trauma and engage in proactive relaxation techniques.  Dr. Garbarino also recommended renewal of Plaintiff's request for single cell housing at IDTT meetings.  As his treatment progressed, however, Dr. Garbarino's diagnosis changed from PTSD to Adjustment Disorder and then Depressive Disorder, Not Otherwise Specified.  These diagnostic changes resulted from Plaintiff's evolving symptomology and response to treatments.

United States District Court

For the Northern District of California

Decl. J. Garbarino Supp. Mot. Summ. J. ("Garbarino Decl.") ¶¶ 4-22; Zika Decl. ¶ 10.

One piece of information Defendants considered when adjusting Plaintiff's diagnosis and treatment plan was the fact that they were unable to identify a "triggering event" that led to PTSD, because it appeared that his anxiety disorder more likely stemmed from perceived threats by other inmates as a consequence of his rape conviction, rather than the alleged assault that occurred in 2003.  This was not the only factor on which they based their assessment, however.  In addition to Plaintiff's stated beliefs that his problems were "mood and situational," he admitted mental issues with the death of his mother, disappointment in his accomplishments and acceptance of his life in prison.  Zika Decl. ¶¶ 9-11; Garbarino Decl. ¶¶ 9-11.

Plaintiff had been in single cell housing for two-and-one-half years by March 2011, when CTF mental health staff determined that his mental condition had not satisfactorily improved and another treatment course was needed that did not include single celling.  Zika Decl. ¶ 16; Garbarino Decl. ¶ 16.  In addition to CTF staff and Defendants' determination that his mental condition did not justify continued placement in single cell housing, they believed that his continued single cell housing placement could actually reinforce and harden his panic disorder.  Id.  Defendants offered Plaintiff a variety of housing, programmatic and treatment options to address and work on his anxiety disorder, but he refused each, insisting that single celling is his only treatment option.  Zika Decl. ¶¶ 13-28.

     2.   Plaintiff's Opposition

1   In opposition to Defendants' motion for summary judgment,

2   Plaintiff argues that their refusal to renew the single cell

3   recommendation was not medically reasonable, but his opposition

4   evidence does not raise a triable issue of material fact with

5   respect to the reasonableness of Defendants' diagnosis and

6   treatment.

7   Plaintiff argues that Defendants' contention that he does not

8   have PTSD is not medically reasonable because they had previously

9   properly diagnosed him with PTSD, as did seven other CDCR doctors.

10  Defendants do not deny that they at one time diagnosed Plaintiff

11  with PTSD.  The evidence shows, however, that, during the two-year

12  period when he was diagnosed with PTSD, he also had other

13  diagnoses that did not include PTSD.  Additionally, since March

14  2011, not only Defendants but other CTF mental health staff as

15  well have concluded that he does not have PTSD and is not entitled

16  to single cell housing for his mental health condition.  Zika

17  Decl. ¶¶ 21-27; Zika Decl. Supp. Reply ¶¶ 8-9.

18  Plaintiff claims his PTSD diagnosis is supported by progress

19  notes written on March 14, 2011, by Dr. Burton, a psychiatrist,

20  eight days before the CTF IDTT declined to recommend him for

21  continued single cell housing.  The notes were the product of a

22  telepsychiatry meeting between Dr. Burton and Plaintiff, during

23  which Dr. Burton spoke with him about his medications and concerns

24  about being single celled.  In his notes memorializing the

25  meeting, Dr. Burton did not diagnose Plaintiff with PTSD; rather,

26  he wrote that Plaintiff presented "with symptoms of depression,

27  panic disorder, and PTSD," that he declined a prescription for an

28  anti-depressant to help him with his depression and anxiety, and

16

**United States District Court**
For the Northern District of California

1  that he was not a danger to himself or others and was able to

2  provide for himself in a correctional setting.  Zika Decl. Ex. A

3  at 363.

4      Plaintiff also claims that his PTSD diagnosis is supported by

5  Dr. Kohler's progress notes from her April 27, 2011 and February

6  15, 2012 medical appointments with him, which took place after he

7  had been returned to a double cell.  In the notes from April 27,

8  2011, Dr. Kohler recorded her medical assessment of Plaintiff's

9  condition as "PTSD" and wrote that "[h]ousing with a cellie is not

10 therapeutic but poses real threat to the patient of violence,

11 worsening mental health, and physical health consequences.  Single

12 cell status is needed for his protection and to maintain stable

13 mental health and physical health."  Opp'n Ex. A-14.  In her notes

14 from February 15, 2012, Dr. Kohler recorded her medical assessment

15 of Plaintiff's condition as: "Sleep deprivation related to concern

16 re potential assault.  Pt becoming increasingly agitated."  Opp'n

17 Ex. A-23.  She also wrote that it was difficult to assess whether

18 Plaintiff's asthma symptoms "are related to bronchospasm vs

19 panic."  Id.

20     Notwithstanding the above assessments, Dr. Kohler, in her

21 declaration in support of Defendants' reply to Plaintiff's

22 opposition, asserts that she is not a mental health clinician

23 qualified to make a diagnosis of PTSD and, based on her experience

24 with PTSD, she does not believe that Plaintiff has the appropriate

25 case factors to indicate that he suffers from PTSD.  Decl. L.

26 Kohler Supp. Reply ("Kohler Decl.") ¶ 3.  Further, she avers that,

27 in her April 2011 and February 2012 medical progress notes, she

28 did not determine that Plaintiff was suffering physical harm

17

because of his double-cell housing status, rather, she only recorded his statements to her concerning his experience.  Id. ¶ 4.

Further, in response to Plaintiff's reliance on Dr. Kohler's progress notes, Dr. Zika attests:

> As a mental-health professional with nearly thirty years of practice experience, I disagreed with Dr. Kohler's assessment of Plaintiff's need for single-cell housing. I believed that her diagnosis and plan resulted from incomplete information provided by Plaintiff, and lacked the professional insight that CTF mental-health staff had concerning anxiety disorders and Plaintiff's particular case. Prolonged single-cell housing had not fully addressed Plaintiff's evolving anxiety disorders, and I agreed with my mental-health care practitioners that Plaintiff needed to return to a double-cell prison environment to address his anxiety symptoms, while also engaging in and benefitting from the many treatment options we afforded him.

Zika Decl. ¶ 20. [3]

Based on the above, the Court finds that, even if Dr. Kohler's progress notes reflect her assessment that Plaintiff has PTSD and has manifested adverse physical effects as a result of being double celled, such evidence does not raise a triable issue of material fact with respect to whether Defendants' diagnosis and treatment of Plaintiff was medically reasonable.  It is undisputed that Dr. Kohler is not a mental health care professional and was

_____

[3] Plaintiff moves to strike the declarations submitted by Dr. Kohler and Dr. Zika in support of the reply on the ground that the statements made therein are contradicted directly by the evidence he has presented in support of his opposition to the motion for summary judgment.  The motion is DENIED.  The declarations are evidence the Court may consider in support of Defendants' motion. Plaintiff's request that he be granted leave for his motion to exceed the applicable page limit is GRANTED.

United States District Court
For the Northern District of California

not responsible for diagnosing or treating Plaintiff's mental health needs.  Additionally, the undisputed evidence shows that Defendants are responsible for making such assessments and are not bound by Dr. Kohler's medical opinion about Plaintiff's mental health treatment.

Plaintiff further claims that Dr. Bright, with whom he consulted about his request for a single cell as an accommodation under the Americans with Disabilities Act, diagnosed him with PTSD.  The record shows, however, that Dr. Bright is not a mental health professional and assessed Plaintiff based on his subjective description of Plaintiff's mental health needs and medical records.  Zika Decl. Ex. A at 422-23.  After reviewing Plaintiff's request, Dr. Bright concluded: "The patient has no medical indication for being single cell housed.  [His need for a single cell] is a psychiatric evaluation and diagnosis.  He was instructed to follow this up with Psychiatry."  Id. at 423.

Plaintiff maintains that the treatment plans chosen by Defendants are medically unacceptable.  However, he has not presented evidence that raises a triable issue of material fact in this regard.  The evidence is undisputed that he has refused all treatment options offered by CTF mental health staff other than being single celled, including further therapy sessions, Special Needs Yard housing and medications.  Zika Decl. ¶¶ 17, 22, 23, 26, 27; Decl. K. Lewis Supp. Reply ("Lewis Decl.") Ex. B,  Pl.'s Response to Request for Admission No. 6.  While he claims that many of these treatment options were ineffective and caused him to be single celled in 2008, there is no medical support in the record for this assertion.  To the contrary, the record shows that

**United States District Court**
For the Northern District of California

some of the anxiety-management techniques that Dr. Garbarino recommended have helped Plaintiff bring his panic symptoms under control, Garbarino Decl. ¶ 5-6, and that he has been treated with only one drug (Celexa, an antidepressant) and has refused to try any of the myriad other drug options that Defendants attest are available to treat anxiety disorders.  Zika Decl. Supp. Reply ¶ 3.

Further, Plaintiff's objection that placement on a Special Needs Yard is medically unreasonable because he will still be in fear of the violent inmates housed there is unsubstantiated because he has presented no evidence that he has ever lived on such a yard or that sex offender inmates are targeted for assault on those yards.  Moreover, the evidence shows that he was not assaulted or threatened by his cellmate between April 2011, when he was moved to double cell housing, and October 3, 2012, when he was returned to a single cell after the Court granted his request for a preliminary injunction.  Lewis Decl. Ex. B, Pl.'s Response to Request for Admission No. 5.

Finally, Plaintiff claims that Defendants have acted with deliberate indifference because they changed their diagnosis of his condition and prescribed treatment in response to pressure from custody staff to house him in a double cell.  Defendants deny any such pressure and attest that custody concerns have no role in the IDTT's recommendations regarding housing for mental health program inmates; the only reason they refused to recommend Plaintiff for single cell housing was because, in their clinical opinions, it was not needed for his anxiety condition.  Zika Decl. ¶ 18; Garbarino Decl. ¶ 15.  Further, as Plaintiff has acknowledged, custody staff make the final decisions on inmate

United States District Court

For the Northern District of California

housing issues and can disregard any IDTT recommendation.  Thus, the evidence supports the reasonable inference that custody staff would have no reason to pressure mental health staff about making any particular recommendation.

### 3.  Findings

As discussed above, deliberate indifference is not established simply by a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment.  See Franklin, 662 F.2d at 1344.  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health.  Toguchi, 391 F.3d at 1058.

Having reviewed the parties' evidence and arguments, the Court finds that Plaintiff has not raised a genuine issue for trial with respect to whether Defendants acted with deliberate indifference to his serious medical and mental health needs. Although Plaintiff disagrees with Defendants' diagnosis of, and treatment plan for, his anxiety disorder, the record evidence shows that over a course of several years Defendants have made reasonable attempts to attend to his mental health needs and the physical manifestations resulting therefrom.  In particular, the record shows that Defendants' diagnoses and recommended treatments have evolved over time based on their considered evaluation of his symptoms and responses to treatment.

In sum, Plaintiff has not presented evidence which shows that Defendants' care has been medically unacceptable, Toguchi, 391

United States District Court

For the Northern District of California

1   F.3d at 1058, or that they have acted with a "sufficiently
2   culpable state of mind" to establish deliberate indifference to
3   his serious mental health and medical needs.  See Farmer, 511 U.S.
4   at 847.  Accordingly, Defendants' motion for summary judgment is
5   GRANTED and Plaintiff's motion to renew the preliminary injunction
6   is DENIED.[4]

7   II.  Pending Class Action

8       Defendants argue that Plaintiff is precluded from seeking
9   injunctive relief by the currently pending class actions Coleman
10  v. Brown, et al., No. S 90-0520 LKK-JFM (E.D. Cal.), and Plata v.
11  Brown, No. 01-cv-01351 TEH (N.D. Cal.).  The Court rejected this
12  argument in its order granting Plaintiff's request for preliminary
13  injunctive relief.  Defendants do not assert new or different
14  grounds in the present motion that persuade the Court to rule
15  otherwise.  Additionally, the Ninth Circuit recently held that
16  prisoners who are members of the Plata class action seeking
17  systemic medical injunctive relief may proceed with individual
18  claims for medical treatment that pertain solely to their own
19  individual care.  See Pride v. Correa, 719 F.3d 1130, 1137-38 (9th
20  Cir. 2013).  Accordingly, Defendants' motion for summary judgment
21  on this ground is not well-taken.

22  III. Qualified Immunity

23      Defendants argue that they are entitled to qualified

24

25  _____

26      [4] Defendants' motion for reconsideration of the order
    granting Plaintiff's first request to renew the preliminary
27  injunction is DENIED as moot, as is Plaintiff's motion to dismiss
    that motion.

28

United States District Court
For the Northern District of California

immunity.  In this case, Plaintiff seeks both injunctive relief and money damages.  "Qualified immunity is only an immunity from suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief."  Hydrick v. Hunter, 669 F.3d 937, 939-40 (9th Cir. 2012).  Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's injunctive relief claims.

With respect to Plaintiff's damages claims, the defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

On the facts presented herein, viewed in the light most favorable to Plaintiff, Defendants prevail as a matter of law on their qualified immunity defense because the record establishes no constitutional violation.  Even if a constitutional violation did occur, however, Defendants reasonably could have believed their conduct was lawful.  Specifically, it would not have been clear to Defendants that they failed to take reasonable steps to abate a substantial risk of harm to Plaintiff by providing him with the above-described care and treatment for his serious mental health

and medical needs, notwithstanding their refusal to renew their
recommendation that he be single celled.  Accordingly, Defendants
are entitled to qualified immunity and their motion for summary
judgment is GRANTED for this reason as well.

IV.  Plaintiff's Cross-Motion for Summary Judgment

Plaintiff has filed a cross-motion for summary judgment in
which he argues that he is entitled to a favorable judgment on his
claims as a matter of law.  When the parties file cross-motions
for summary judgment, the district court must consider all of the
evidence submitted in support of both motions to evaluate whether
a genuine issue of material fact exists precluding summary
judgment for either party.  The Fair Housing Council of Riverside
County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir.
2001).

In considering Plaintiff's cross-motion, the Court regards as
true Defendants' version of the evidence and draws all reasonable
inferences in favor of them.  Celotex, 477 U.S. at 324.  To show
that he is entitled to judgment as a matter of law, Plaintiff must
establish there is an absence of a genuine issue of material fact
and that he has made a showing sufficient to establish the
existence of the elements essential to his case.  Id. at 322-23.

Under Defendants' version of the facts discussed above,
Plaintiff has not made a showing sufficient to establish that they
acted with deliberate indifference to his serious mental health
and medical needs by refusing to renew the recommendation that he
be single celled.  Accordingly, Plaintiff's cross-motion for
summary judgment is DENIED.

CONCLUSION

United States District Court

For the Northern District of California

1   For the foregoing reasons, the Court orders as follows:

2   1.   Defendants' motion for summary judgment is GRANTED.

3   Docket no. 18.   Judgment shall be entered in favor of all

4   Defendants and against Plaintiff.

5   2.   Plaintiff's motion to strike Defendants' reply evidence

6   is DENIED; his request to exceed the applicable page limit of the

7   motion to strike is GRANTED.   Docket no. 45.

8   3.   Plaintiff's cross-motion for summary judgment is DENIED.

9   Docket no. 35.

10   4.   Plaintiff's motion to renew the preliminary injunction

11   for an additional ninety days from the date of this Order is

12   DENIED.   Docket no. 59.

13   5.   Defendants' motion to file a motion for reconsideration

14   of the Court's order renewing the preliminary injunction is

15   DENIED.   Docket no. 43.

16   6.   Plaintiff's motion to dismiss Defendants' motion to file

17   a motion for reconsideration is DENIED.   Docket no. 47.

18   The Clerk of the Court shall enter judgment and close the

19   file.

20   This Order terminates Docket nos. 18, 35, 43, 45, 47 and 59.

21   IT IS SO ORDERED.

22   Dated:   8/27/2013

23   CLAUDIA WILKEN
     United States District Judge

24

25

26

27

28